IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

      Plaintiff,

  v.

JOHN JAMES HORNEZES,

      Defendant.

Criminal No. 18-0240
ELECTRONICALLY FILED

**MEMORANDUM ORDER**

Before the Court is Defendant's *pro se* Motion for Compassionate Release and his counseled Amended Motion for Compassionate Release. ECF 61 and ECF 67.[1] The Government filed a response opposing same. ECF 73. After careful consideration, for the reasons set forth below, this Court will DENY the Motion.

**I. Background**

On December 13, 2018, Defendant, pursuant to a plea agreement with the Government, waived indictment and pled guilty to Counts One through Three of an Information charging him with: (1) conspiracy to distribute and possession with intent to distribute 500 grams or more of cocaine; (2) possession with intent to distribute 28 grams or more of cocaine base, in the form commonly known as crack; and (3) possession of a firearm and ammunition by a convicted felon. On October 31, 2019, Defendant was sentenced to 72 months imprisonment at each count to be served concurrently, followed by eight years of supervised release at each count to be

---

[1] Defendant had previously filed a Motion for Compassionate Release at ECF 55 which this Court denied without prejudice to refile due to Defendant's failure to exhaust his administrative remedies. ECF 60.

served concurrently. Defendant was assigned to Elkton FCI by the Bureau of Prisons to serve his term of imprisonment. Currently, Defendant's release date is February 4, 2025. https://www.bop.gov/inmateloc/ (last visited 2/25/2021).

On June 26, 2020, during his term of imprisonment at Elkton FCI, Defendant tested positive for COVID-19. ECF 67, p. 8 and ECF 67-6. Defendant has largely recovered from the infection but reports that he suffers shortness of breath. ECF 67, p. 8.

**II. Standard of Review**

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed.").

The First Step Act's amendment of 18 U.S.C. § 3582 provides an example of such specific authorization.[2] As amended, the First Step Act allows this Court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In addition, this Court must consider: (1) whether Defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[3]

---

[2] Title 18 U.S.C. § 3582(c)(1)(A) is referred to as "the compassionate release statute," because it allows a court to modify a term of imprisonment if certain conditions are present. Historically, the presence of the conditions only permitted the Bureau of Prisons ("BOP") to bring a motion under the compassionate release statute. However, in 2018, the First Step Act modified the compassionate release statute and authorized a defendant to file his own motion for relief. First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018).

[3] Defendant has supplied the Court with documentary evidence that he had exhausted his administrative remedies. ECF 61-1, p. 9. In addition, the Government indicated in its responsive brief that it did not contest that Defendant

2

Section 3582 does not define the term "extraordinary and compelling reasons." Instead, Congress delegated that task to the Sentencing Commission. See 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples").

The Sentencing Commission defined "extraordinary and compelling" as it related to the BOP's discretion under the pre-First Step Act version of § 3582(c)(1)(A)(i), but this definition found in the U.S. Sentencing Guidelines Manual ("the Guidelines") § 1B1.13, is outdated. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020). Although the relevant portions of the Guidelines predate the passage of the applicable provisions of the First Step Act, and would be advisory in any event, they provide some benchmarks for this Court's consideration. *See id.* at 397 ("[A] majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'") (*quoting United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D. NC 2019)). For example, the policy statement provides that a defendant may show "extraordinary and compelling" reasons for compassionate release based on the defendant's medical condition, age, family circumstances, or "other reasons." § 1B1.13, cmt. n.(1).

**III. Analysis**

Turning to the assertions in Defendant's Motion and Amended Motion, the Application Notes to § 1B1.13 of the Guidelines speak to conditions which would support compassionate release in the form of two (2) different medical conditions that can rise to an "extraordinary and

---

exhausted his administrative remedies. ECF 73, p. 6-7. Thus, the Court will analyze and discuss the substance of Defendant's arguments for compassionate release.

compelling" level: (1) terminal illnesses; and (2) non-terminal conditions that substantially diminish the ability of the defendant to provide self-care within the correctional environment. Here, the Court finds that Defendant's immediate situation does not rise to an "extraordinary and compelling" level pursuant to either option.

### A. Terminal Illnesses

The relevant Application Note suggests that a defendant suffers from a "terminal illness" if they are afflicted with "a serious and advanced illness with an end of life trajectory." § 1B1.13, cmt. n.(1)(A)(i). A "specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required" to prove that an illness is "terminal." *Id.* The Application Note provides specific examples of terminal illnesses such as: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Given this guidance, this Court finds that Defendant's alleged medical conditions do not qualify him for relief as they are "terminal illnesses" as that term is defined and described.

### B. Non-Terminal Illnesses

Similarly, the Court finds that Defendant's <u>current</u>, non-terminal medical condition, as a COVID-19 survivor, even when considered in combination with the ongoing COVID-19 pandemic, does not rise to an "extraordinary and compelling" level. Under the Sentencing Commission's Policy Statement, a defendant's non-terminal medical condition can present an extraordinary and compelling reason warranting release if "a defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.(1)(A)(ii).

4

Defendant has no medical conditions of note other than the fact that he was COVID-19 positive in June of 2020, and that he has residual shortness of breath, presumably as a result of contracting the virus last year. Since testing positive for COVID-19 on June 26, 2020, Defendant has been retested four (4) additional times for the virus: on July 10, 2020, July 17, 2020, November 16, 2020, and December 5, 2020. Each of these four (4) retests have yielded a negative result. Simply stated, Defendant is no longer testing positive for COVID-19.

However, Defendant's motion describes his concerns about potential long term and/or permanent health limitations he will encounter due to his bout of COVID-19. In addition, Defendant's motion also discusses the concerns he has of either re-contracting the original COVID-19, and/or contracting new, more virulent strains of COVID-19 while incarcerated at Elkton FCI. In support of his argument in favor of compassionate release, Defendant notes that the prison facility was and is either ill-equipped (or simply physically unable) to contain the spread of the virus which Defendant himself contracted while imprisoned.

The Court first notes that a prior COVID-19 infection has not been identified by the Centers for Disease Control ("CDC") as a risk factor for either future infections of COVID-19 or severe complications. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited 2/25/2021). The CDC website also indicates, "Cases of reinfection of COVID-19 have been reported but are rare. In general, reinfection means a person was infected (got sick) once, recovered, and then later became infected again. Based on what we know from similar viruses, some reinfections are expected." https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/end-home-isolation.html (last visited 2/25/2021).

Because Defendant's prior bout of COVID-19 is not identified by the CDC as a risk factor, and given that his current physical condition shows that he no longer is COVID positive, the Court finds that this Defendant does not suffer from a condition which "substantially diminishes" his ability "to provide self-care" at Elkton FCI. Defendant's concerns about his health should he recontract the virus or encounter and contract a more virulent strain of COVID-19 while incarcerated also fall short of providing a compelling reason for release.

First, as noted by the United States Court of Appeals for the Third Circuit in *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020), "the mere existence "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." Thus, this Court concludes that Defendant's fear about the possibility of a resurgence and spread of COVID-19 at Elkton FCI, alone, cannot independently justify compassionate release according the Court of Appeals decision in *Raia.*

Next, Defendant's argument that he has been short of breath since recovering from COVID-19 are not reflected in his medical records as produced by the Government. ECF 77 (filed under seal). Therefore, there is no evidence to support Defendant's claim that he has an ongoing medical condition nor one that has been identified as a risk factor for either future infections of COVID-19 or severe complications by the CDC. Accordingly, his assertions will not justify compassionate release.

Finally, although Defendant has contracted and recovered from COVID-19, Defendant he has no pre-existing conditions nor any chronic medical conditions. He only has his speculation and conjecture that he may suffer some sort of future chronic or acute condition because of his

bout of COVID-19. The Court finds that speculation about his future health condition fails as a sufficient basis upon which to grant compassionate release.

**IV. Conclusion**

Because Defendant is unable to demonstrate that extraordinary and compelling reasons exist pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court DENIES Defendant's Motion and Amended Motion for Compassionate Release. ECF 61 and ECF 67. Accordingly, this Court declines to conduct further analysis with respect to Defendant's § 3553(a) factors.

    SO ORDERED, this 25th day of February, 2021.

    s/Arthur J. Schwab
    Arthur J. Schwab
    United States District Judge


cc:    All ECF Registered Counsel of Record